**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| INGURAN, LLC, | § | |
| | § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO. 4:14-CV-02535 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| ABS GLOBAL, INC., | § | |
| | § | |
| *Defendant* | § | |

## COMPLAINT

Plaintiff Inguran, LLC ("Inguran"), d/b/a Sexing Technologies, brings this action for damages and declaratory relief against Defendant ABS Global, Inc. ("ABS").

### NATURE OF THE ACTION

1.      For nearly a decade, Inguran and ABS have been in a contractual relationship involving the processing of sexed bull semen.  They entered into their first services contract on May 30, 2006, whereby Inguran agreed to provide patented semen-sorting services to sort ABS's bull semen.  They subsequently executed four successor agreements for Inguran to provide similar services, most recently on September 1, 2012 (the "2012 Agreement").

2.      This amicable, productive relationship suddenly ended six weeks ago.  On July 14, 2014, without any prior warning to Inguran, ABS filed a lawsuit against Inguran in the United States District Court for the Western District of Wisconsin (the "Wisconsin Action").  In its complaint, ABS accuses Inguran of engaging in anti-competitive conduct.  ABS also seeks declarations construing various provisions in the 2012 Agreement.  According to ABS's allegations, the contract is unfair, unreasonable, and unenforceable.

3.     ABS initiated the Wisconsin Action without giving Inguran any prior notice of its purported "dispute."   ABS had never communicated any issues, concerns, or disputes regarding any alleged anti-competitive conduct or the terms of the 2012 Agreement.  And Inguran had done nothing to threaten ABS or cause it to fear being sued.

4.     The 2012 Agreement was the result of arm's-length negotiations between sophisticated parties.   Each side expressly acknowledged in the 2012 Agreement that "in consultation with its outside legal counsel, [it] has determined that the terms of this Agreement are fair and reasonable."

5.     ABS manufactured the Wisconsin Action to pressure Inguran into renegotiating the contract's terms.  ABS, which continues to receive benefits under the 2012 Agreement, never intended to perform for the contract's full period.  It also has repudiated certain of its contractual obligations.   Inguran filed this action to protect its rights under the 2012 Agreement, and to recover for the harm it has suffered as a result of ABS's conduct.

## PARTIES

6.     Plaintiff Inguran is a limited liability company organized under Delaware law.  Its principal place of business is in Navasota, Texas.

7.     Defendant ABS is a corporation organized under Delaware law.   Its principal place of business is in DeForest, Wisconsin.  ABS may be served with process through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

8.     This action arises in part under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and Section 2 of the Sherman Act, 15 U.S.C. § 2.  The Court therefore has

jurisdiction over this action pursuant to 15 U.S.C. §§ 15 and 16, and 28 U.S.C. §§ 1331 and 1337. The Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202, as Inguran seeks various determinations under the Declaratory Judgment Act.

9.      The Court has supplemental jurisdiction over Inguran's state-law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to Inguran's federal claim based on the Clayton and Sherman Acts that they form part of the same case or controversy.

10.     ABS is subject to personal jurisdiction in this Court pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22. ABS also is subject to general personal jurisdiction because, on information and belief, ABS regularly solicits and conducts business in Texas and has minimum contacts with Texas. On information and belief, ABS is registered to do business in Texas; maintains a registered agent for service of process in Texas; does substantial business in Texas; maintains facilities and/or offices in Texas; and has employees who work in Texas. ABS also is subject to specific personal jurisdiction because Inguran's claims arise from and are directly related to ABS's actions in negotiating a contract with Inguran, which negotiations took place in Texas.

11.     Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22. Venue also is proper under 28 U.S.C. § 1391(b)-(d) because a substantial part of the events or omissions giving rise to this action occurred in this district, including specific actions by ABS.

## BACKGROUND

12.     Inguran (d/b/a Sexing Technologies) is in the business of producing sexed bovine semen, *i.e.*, semen that is processed so that the resulting dose (sold in "straws") will selectively produce either a male or a female calf. Inguran's subsidiary, XY, LLC, developed and obtained

several patents on a highly successful "sorting" technique for producing such sexed semen.  Over the years, XY continually has worked to improve the patented sorting methods and associated equipment.  Inguran licensed the patents from XY so that it can provide semen sorting services using the patented technique.

13.     Inguran provides its semen sorting services to companies that operate so-called "bull studs."  These "bull stud" companies harvest semen from bulls with desirable genetic traits and sell it to dairy farmers and cattle producers.  The farmers and cattlemen use the semen to breed calves with the same traits as the donor bulls.  Dairy farmers, for example, generally prefer to breed female cows that can produce high volumes of milk.  Depending on their customers' preferences, bull stud companies contract with Inguran to produce varying amounts of the sexed semen.

14.     ABS is one of the largest bull stud companies in the country.  Since the mid-2000s, Inguran has used the patented sorting method to sort semen provided by ABS into predominantly male or female semen.  Inguran has provided its sorting services to ABS under a series of services contracts known as "Semen Sorting Agreements."  The parties entered into their first such agreement on May 30, 2006.  Under the agreement, Inguran was obligated to produce hundreds of thousands of straws of sorted bovine semen for ABS over a 27-month period.  The parties subsequently executed similar successor agreements in September 2007, October 2010, and July 2011.

15.     While the July 2011 agreement still was in effect, the parties began negotiating yet another successor contract.  In March 2012, two of ABS's senior executives, John Worby and Jesus Martinez, travelled to Houston to meet with Inguran's co-CEOs, Juan Moreno and Maurice Rosenstein, and its CFO, Scott Holland.  Following the meeting, Mr. Worby wrote to Mr.

4

Rosenstein at Inguran's Navasota headquarters to express interest in "a longer term extension or renewal of our [July 2011] contract." Mr. Worby also explained that ABS desired to significantly increase its purchase quantity going forward. Two other ABS executives subsequently travelled to Texas for a second meeting to discuss the terms of the new deal.

16.     After months of careful negotiations, the parties executed the detailed 2012 Agreement that defines their respective rights and obligations in unambiguous terms. The 2012 Agreement contains an integration clause, a Texas choice-of-law clause, and confidentiality provisions. It also expressly states that both parties were represented by counsel, and that after consultation with their attorneys, both parties determined the terms of the contract to be "fair and reasonable." Specifically, the 2012 Agreement provides that:

> Each party represents that it understands the matters set forth herein, and that, in consultation with its outside legal counsel, has determined that the terms of this Agreement are fair and reasonable. ABS represents that its legal counsel, the firm of Baker & McKenzie, has reviewed this Agreement. [Inguran] represents that its legal counsel, the firm of Akin Gump Strauss Hauer & Feld LLP, has reviewed this Agreement.

17.     With the new contract in place, ABS and Inguran continued their amicable relationship. To this day, Inguran continues sorting large quantities of bovine semen for ABS as provided for in the 2012 Agreement.

18.     On July 14, 2014, nearly two years into the 2012 Agreement, ABS filed the Wisconsin Action.[1] ABS asserts a monopolization claim under Section 2 of the Sherman Act and an unfair competition claim under Wisconsin common law. It also seeks declarations construing certain clauses in the 2012 Agreement in its favor, or simply finding the clauses unenforceable.

---

[1] *ABS Global, Inc. v. Inguran, LLC d/b/a Sexing Technologies*, No. 3:14-cv-00503 (W.D. Wis. filed July 14, 2014).

19.     ABS accuses Inguran of engaging in anti-competitive conduct.  ABS alleges that Inguran is a monopolist in an alleged market for "processing raw bovine ejaculate in the U.S. to produce Sexed Bovine Semen."  ABS further alleges that Inguran has engaged in exclusionary conduct by allegedly insisting on onerous contract provisions for the purported purpose of locking up large customers; by acquiring patents and patent rights related to the production of sexed semen; and by restricting its customers from developing or commercializing technology that might compete with the patented sorting method.

20.     This was the first time in the parties' eight-year relationship that ABS ever made such assertions.  Inguran is not a monopolist and has not engaged in anti-competitive or exclusionary conduct.  Inguran negotiated a contract that ABS itself acknowledged was "fair and reasonable."  Inguran is providing a service that bull stud companies like ABS desire, using a highly effective technique that its subsidiary XY developed and patented, and then licensed to Inguran.

21.     With respect to its declaratory judgment claims, ABS raises three requests.  First, it asks the Wisconsin court to construe the 2012 Agreement as not encompassing certain research and development activities it apparently is pursuing.  Second, it seeks a determination that the 2012 Agreement violates the Texas Covenants Not to Compete Act.  Third, it seeks a determination that the 2012 Agreement's liquidated damages clause is unenforceable under Texas law.

22.     As with its antitrust and unfair competition claims, ABS gave Inguran no prior warning of its purported "dispute" over the 2012 Agreement's scope, fairness, or enforceability.  The parties entered into the 2012 Agreement based largely on ABS's representation that it wanted a long-term deal, as well as a significant increase in the volume of Inguran's sorting

services.  The parties spent months negotiating the 2012 Agreement, with both sides being represented by counsel throughout the process.  Yet, despite expressly acknowledging the contract to be "fair and reasonable," and then performing without complaint for two years, ABS filed suit against Inguran in Wisconsin.  Six weeks later, on August 25, 2014, ABS sent Inguran a letter in which it cancelled the 2012 Agreement's extension period beyond the end of its current term and thereby terminated the contract, effective August 31, 2017.  ABS also asserted that it would not pay the liquidated damages that it agreed to pay under the contract in the event of such a termination.

23.    Before it initiated the Wisconsin Action, ABS never indicated any dispute or misunderstanding about the 2012 Agreement to Inguran.  Nor had ABS previously accused Inguran of engaging in anti-competitive or unfair conduct.  As for Inguran, it has never threatened ABS or done anything that reasonably could have caused ABS to fear being sued. When ABS filed the Wisconsin Action, there was no justiciable "case or controversy" between the parties, as is required to justify ABS's requested declaratory relief.

24.    By suing Inguran and attacking the 2012 Agreement, ABS created a live dispute regarding its antitrust claims and claims about the 2012 Agreement.  Inguran files this lawsuit to protect its interests and confirm its rights under the contract.

## COUNT I – DECLARATORY JUDGMENT
## THAT INGURAN HAS NOT VIOLATED SECTION 2 OF THE SHERMAN ACT

25.    In the Wisconsin Action, ABS alleges that Inguran has violated Section 2 of the Sherman Act, 15 U.S.C. § 2, and that ABS is entitled to relief therefrom under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.  Specifically, ABS alleges that Inguran has "maintained, and continues to maintain, [an] unlawful monopoly through exclusionary and

unlawful conduct," and that "[u]nless [Inguran] is enjoined, [it] will continue to engage in the exclusionary conduct."

26.     Inguran denies ABS's allegations.  Inguran has neither created a monopoly nor engaged in exclusionary, unlawful conduct.  Inguran has not violated the Sherman Act.

27.     In light of their disagreement—and considering ABS's allegation in the Wisconsin Action that it "is suffering and will continue to suffer irreparable injury" as a result of Inguran's conduct—there is a live, justiciable controversy between Inguran and ABS regarding whether Inguran has violated the Sherman Act.  Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, Inguran is entitled to a judicial declaration that it has not violated the Sherman Act.

**COUNT II – DECLARATORY JUDGMENT
THAT INGURAN HAS NOT COMMITTED
UNFAIR COMPETITION UNDER TEXAS COMMON LAW**

28.     In the Wisconsin Action, ABS alleges that Inguran has engaged in "unfair competition in violation of the common law of the state of Wisconsin."  Specifically, ABS alleges that it "is a potential competitor to [Inguran] in the Sexed Bovine Semen Processing Market," and that Inguran's "exclusionary conduct . . . has prevented ABS from competing in that market."

29.     Inguran denies ABS's allegations.  First, Wisconsin law does not apply.  The 2012 Agreement contains a Texas choice-of-law clause providing that it "shall be governed by and construed in accordance with the laws of the State of Texas without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Texas . . . ."  ABS could properly bring an unfair competition claim under Texas law only.  Second, Inguran has not engaged in unfair competition in violation of Texas law.

8

30.     In light of their disagreement—and considering ABS's allegation in the Wisconsin Action that "[a]s a direct and proximate result of [Inguran]'s exclusionary conduct . . . ABS has been injured and financially damaged"—there is a live, justiciable controversy between Inguran and ABS regarding whether Inguran has engaged in unfair competition in violation of Texas law. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, Inguran is entitled to a judicial declaration that it has not engaged in unfair competition in violation of Texas law.

**COUNT III – DECLARATORY JUDGMENT**
**THAT INGURAN AND ABS'S CONTRACT PROHIBITS ABS FROM**
**COMMERCIALIZING ITS LASER-BASED TECHNOLOGY**
**FOR PRODUCING SEXED BOVINE SEMEN**

31.     In the Wisconsin Action, ABS alleges that certain provisions in the 2012 Agreement do not encompass certain research and development activities it apparently is pursuing.  Specifically, ABS alleges that the 2012 Agreement does not prohibit it "from producing, marketing, and selling Sexed Bovine Semen using a laser-based method . . . [or] performing research and development concerning a laser-based method."

32.     Inguran denies ABS's allegations.  The 2012 Agreement does encompass these activities, such as ABS's alleged "laser-based method."

33.     In light of their disagreement—and considering ABS's allegation in the Wisconsin Action that it already has been developing the laser-based method—there is a live, justiciable controversy between Inguran and ABS regarding whether the 2012 Agreement encompasses ABS's alleged research and development activities.  Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, Inguran is entitled to a judicial declaration that the 2012 Agreement does encompass these activities.

**COUNT IV – DECLARATORY JUDGMENT
THAT INGURAN AND ABS'S CONTRACT DOES NOT VIOLATE THE TEXAS
COVENANTS NOT TO COMPETE ACT**

34.     In the Wisconsin Action, ABS alleges that the 2012 Agreement violates the Texas Covenants Not to Compete Act.  Specifically, ABS alleges that the 2012 Agreement is unlawful under the Act because it contains "restrictions on ABS research [that] serve no legitimate business interest," and which "are not reasonably limited in time, geography, or scope of activity."

35.     Inguran denies ABS's allegations.  The 2012 Agreement does not violate the Texas Covenants Not to Compete Act.

36.     In light of their disagreement—and considering ABS's allegation in the Wisconsin Action that it desires to compete with Inguran—there is a live, justiciable controversy between Inguran and ABS regarding whether the 2012 Agreement violates the Texas Covenants Not to Compete Act.  Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, Inguran is entitled to a judicial declaration that the 2012 Agreement does not violate the Texas Covenants Not to Compete Act.

**COUNT V – DECLARATORY JUDGMENT
THAT THE LIQUIDATED DAMAGES CLAUSE IN INGURAN AND ABS'S
CONTRACT IS ENFORCEABLE UNDER TEXAS COMMON LAW**

37.     In the Wisconsin Action, ABS alleges that the 2012 Agreement's liquidated damages clause is unenforceable under Texas common law.  Specifically, ABS alleges that the liquidated damages clause is unlawful because the damages ABS would cause by breaching the 2012 Agreement "are not incapable or difficult of estimation," and because the amount of the liquidated damages "cannot be a reasonable forecast of harm from breach."

38.     Inguran denies ABS's allegations.  The 2012 Agreement's liquidated damages clause is fully enforceable under Texas common law.

39.     In light of their disagreement—and considering ABS's liability for liquidated damages, as set forth in Count VII below—there is a live, justiciable controversy between Inguran and ABS regarding the enforceability of the 2012 Agreement's liquidated damages clause.  Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, Inguran is entitled to a judicial declaration that the liquidated damages clause is enforceable.

## COUNT VI – FRAUDULENT INDUCEMENT

40.     Texas law prohibits a party from fraudulently inducing another into entering a contract.  Texas law applies because of the 2012 Agreement's Texas choice-of-law clause.

41.     In negotiating the 2012 Agreement, ABS told Inguran that it wanted and would fully perform a long-term contract.  ABS specifically represented that it desired "a longer term extension or renewal of" the parties' then-effective July 2011 contract.  These representations clearly were material, as any reasonable person would consider the duration of a proposed contract an important factor in determining whether to enter that contract.  .

42.     ABS's representations that it wanted and would fully perform a long-term agreement constituted false statements of fact.  On information and belief, ABS never intended to perform the 2012 Agreement's full period, and it knew as much when it falsely represented to Inguran that it would.

43.     Inguran justifiably relied on ABS's false representations when it executed the 2012 Agreement and thereby agreed to be bound thereby for the 2012 Agreement's full period.  ABS's false representations directly and proximately caused Inguran injury.

44.     The "safe harbor" clause to the research and design provision (the "R&D provision") in paragraph 18 of the 2012 Agreement allowed ABS to continue its current research and development programs that were in place at least ninety (90) days prior to the 2012

Agreement's effective date.  During the negotiations of this clause, ABS failed to disclose its research and development of its alleged "laser-based method" for sorting sperm, and failed to disclose that ABS considered the laser-based method for sorting sperm did not fall within the R&D provision of paragraph 18 of the 2012 Agreement.

45.     ABS had a duty to inform Inguran of its laser-based method for sorting, and that ABS did not consider that the laser-based method was subject to the R&D provision of paragraph 18 of the 2012 Agreement.  ABS's failure to disclose and inform Inguran of its laser-based method constitutes an omission of material fact.  Inguran justifiably relied on ABS's silence when it executed the 2012 Agreement, and the R&D provision and "safe harbor" clause of paragraph 18.  ABS's omissions directly and proximately caused Inguran's injury.

46.     ABS's false representations and omissions entitle Inguran to rescind the 2012 Agreement, or to affirm it and recover damages.

47.     To the extent ABS made the false representations with actual fraudulent intent or malice, Inguran also is entitled to recover exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a).

### COUNT VII – ANTICIPATORY BREACH / REPUDIATION

48.     Under Texas law, a party repudiates a contract when it refuses to perform the contract without just cause.

49.     Under paragraph 3 of the 2012 Agreement, ABS has until August 31, 2014 to elect to terminate the contract beyond the end of its current term.  In the event ABS chooses to do so, paragraph 4(b) of the 2012 Agreement obligates ABS to pay Inguran liquidated damages, which shall be due and payable upon the expiration or earlier termination of this Agreement.

12

50.     On August 25, 2014, ABS sent a letter to Inguran explaining that ABS, pursuant to paragraph 3, had decided "not to extend the Term of the Agreement."  As such, paragraph 4(b) was triggered, and ABS is liable for the liquidated damages.

51.     In its letter, ABS also stated "that the liquidated damages provision of Section 4(b) of the Agreement is unenforceable," and that ABS therefore is not liable for the liquidated damages.

52.     ABS repudiated its obligations under paragraph 4(b) of the 2012 Agreement. ABS's repudiation has caused Inguran injury and entitles Inguran to recover the liquidated damages.

53.     ABS's repudiation also entitles Inguran to recover its reasonable attorney fees, as authorized by Texas Civil Practice & Remedies Code § 38.001(8).

## CONDITIONS PRECEDENT

54.     All conditions precedent required by the 2012 Agreement have been performed or have occurred.

## JURY DEMAND

55.     Pursuant to Federal Rule of Civil Procedure 38(b), Inguran demands a jury trial.

## PRAYER

56.     For these reasons, Inguran respectfully requests that the Court enter judgment against ABS and award Inguran the following:

   a.   A declaration that Inguran has not violated Section 2 of the Sherman Act;

   b.   A declaration that Inguran has not engaged in unfair competition under Texas common law;

   c.   A declaration that Inguran and ABS's contract prohibits ABS from commercializing its laser-based technology for producing sexed bovine semen;

d.  A declaration that Inguran and ABS's contract does not violate the Texas Covenants Not to Compete Act;

e.  A declaration that the liquidated damages clause in Inguran and ABS's contract is enforceable under Texas law;

f.  Liquidated damages in the amount provided in the 2012 Agreement;

g.  Other actual damages in an amount to be proven at trial, including but not limited to:

    i.   Any amounts that remain due to Inguran under the terms of the 2012 Agreement;

    ii.  Reasonable expenses incurred in reliance on ABS's performance of the 2012 Agreement; and

    iii. Any additional amounts owed under the 2012 Agreement's liquidated-damages clause;

h.  Rescission of the 2012 Agreement;

i.  Reasonable attorney fees;

j.  Exemplary damages;

k.  Prejudgment and postjudgment interest;

l.  Costs of suit; and

m.  All other relief the Court deems appropriate.

DATED:  September 3, 2014                 Respectfully submitted,

                                          /s/ James L. Duncan III
                                          James L. Duncan III
                                          State Bar No. 24059700
                                          Southern District Bar No. 896,610
                                          AKIN GUMP STRAUSS
                                          HAUER & FELD, L.L.P.
                                          1111 Louisiana Street, 44th Floor
                                          Houston, Texas 77002
                                          Telephone: (713) 220-5800
                                          Facsimile: (713) 236-0822
                                          jduncan@akingump.com

                                          and

                                          Kirt S. O'Neill
                                          State Bar No. 00788147
                                          Southern District Bar No. *(pro hac appl. pending)*
                                          Daniel L. Moffett
                                          State Bar No. 24051068
                                          Southern District Bar No. *(pro hac appl. pending)*
                                          Clayton N. Matheson
                                          State Bar No. 24074664
                                          Southern District Bar No. 2218022
                                          AKIN GUMP STRAUSS
                                          HAUER & FELD, L.L.P.
                                          300 Convent Street, Suite 1600
                                          San Antonio, Texas 78205
                                          Telephone: (210) 281-7000
                                          Facsimile: (210) 224-2035
                                          koneill@akingump.com
                                          dmoffett@akingump.com
                                          cmatheson@akingump.com

                                          **ATTORNEYS FOR INGURAN, LLC**

*OF COUNSEL:*
Fairley Spillmann
District of Columbia Bar No. 384879
AKIN GUMP STRAUSS
HAUER & FELD, L.L.P.
1333 New Hampshire Ave. N.W.
Washington, DC  20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
fspillman@akingump.com